**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 14-20209-CR-ALTONAGA**

**UNITED STATES OF AMERICA**

**vs.**

**ANDREA MARROQUIN,**
                           **Defendant,**
_____ /

## ANDREA MARROQUIN'S SENTENCING MEMORANDUM

COMES NOW, the Defendant, ANDREA MARROQUIN, by and through undersigned counsel and files the following Sentencing Memorandum to assist the court to evaluate all relevant factors in anticipation of sentencing in the above-styled cause.

### I.      INTRODUCTION

After "consult[ing] and correctly determin[ing] the sentencing range prescribed by the Sentencing Guidelines…[t]he court must then impose a reasonable sentence in light of the factors enumerated in 18 U.S.C. § 3553(a)." *See U.S. v. McBride*, 511 F. 3d 1293 (11th Cir. 2007); *see also Gall v. United States*, 552 U.S. 38 (2007). To comply with the statute, "[t]he court shall impose a sentence sufficient, but not greater than necessary[.]" *See id*.

Pursuant to 18 U.S.C. § 3553, this Court must "consider" the following factors in imposing sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed, (3) the kinds of sentences available, (4) the kinds of sentence and the sentencing range established, (5) any pertinent policy statement, (6) the need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar conduct and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)-(7).

## II.   18 U.S.C. § 3553 SENTENCING FACTORS

(1)   *The nature and circumstances of the offense and the history and characteristics of the defendant.*

The nature and circumstances of the offenses in this case clearly indicate a traditional mortgage fraud scheme effectuated, as so many were, during the height of the real estate market bubble. Drawn in by the rising market values, many first-time offenders like the Defendant, began to make misrepresentations on loan applications hoping to profit from the circumstances affecting the market and the desire of lenders to offer credit.  The Defendant is a first-time offender who accepts her responsibility for her role in this offense for her own economic gain.

The characteristics of the Defendant cannot be discussed without touching upon the many tragedies that marked her early years. As a young child, she sadly witnessed her mother being physically abused by her father. This emotionally chaotic and disturbing experience segued into a disturbing trend for the Defendant. Her first romantic relationship was with a 24-year-old man (Figueroa) when she was 14-years old. (DE 136: ¶ 93). He subjected her to sexual contact before she had reached the age of majority and also to emotional and physical abuse for the next five years. *Id*. Compelled by fear for the safety of her family, the Defendant was able to detach from this relationship. However, the abuse that she suffered at this man's hands, especially the physical injuries and

trauma, and particularly at such a young age, marked the Defendant for decades afterwards.

The Defendant became pregnant at the age of 15 as a result of her abusive relationship with Figueroa and had two children with him. The first is her daughter, Valentina Marroquin, who is 21, lives in the United States and is currently employed as a translator, paralegal, and retail store associate. (DE 136: ¶ 93). The other child is the Defendant's son, Juan Felipe, who is 19 and suffers from drug addiction and major psychiatric issues including schizophrenic episodes. *Id*. Sadly, at the age of 17, while traveling alone into the United States, Juan Felipe was detained by Customs and Border Patrol for 10 hours while they questioned him about the whereabouts of his mother. While the Defendant was living in a location that was listed under her name and could have been easily located, Juan Felipe was terrified by this experience and felt that he had somehow harmed his mother. Upon his return to Colombia, and suffering from the effects of his experience with Customs and Border Patrol, Juan Felipe's addiction and mental health spiraled out of control. Prior to her arrest, the Defendant sought and obtained intervention for Juan Felipe's addiction, providing him with in-patient and outpatient treatment. *See* Attachment A. Regardless of this, the Defendant was arrested shortly after his treatment and can sincerely represent to this Court that not a day goes by that she does not wish that she could take back the pain she caused her son. The Defendant is well aware that it was her behavior that resulted in her son's detention and the ensuing degeneration of his conditions. Her remorse is only rivaled by her frustration at being so alienated from her son at a time when she is so needed.

Another tragic occurrence in the Defendant's life was the murder of her father, who was murdered in front of her and her two children at the age of 19. As a result of this experience, the Defendant went into a depression and had to receive treatment for this condition. This unspeakably violent way of having her father taken from her was not only depressing but also traumatic and left many emotional scars on a young lady who had been subjected to abuse at an early age by her partner, and who was already a mother.

Finally, another tragedy struck the Defendant while she was living in Panama in 2011 and in a romantic relationship with Juan Ruiz. She became pregnant and suffered life-threatening complications causing her doctor to make a quick decision to perform an emergency C-Section and hysterectomy. *See* Attachment B. The baby, Juan Andres Ruiz Marroquin, passed away when he was only 9-days old causing the Defendant to spiral into another depression that necessitated medical intervention. *See* Attachment C.

When the Defendant was arrested in Colombia for the instant offenses on January 18, 2018, she suffered yet another blow, although this time it was self-inflicted. She was detained at "El Buen Pastor" women's prison in Bogota and resided in the notoriously cramped conditions with only the most rudimentary medical attention, for 13 months. *See: https://www.businessinsider.com/prison-cells-prisoners-around-the-world-2018-3#at-the-el-buen-pastor-womens-prison-in-bogota-colombia-as-many-as-20-inmates-can-be-assigned-to-a-single-cell-7* (as many as 20 inmates can be assigned to a single cell). While incarcerated in Colombia, the Defendant earned a Human Rights certificate through the Universidad Los Libertadores in Bogota with "outstanding" performance. *See* Attachemnt E. To earn this certificate the Defendant was required to complete 120 hours of education in International Law and Jurisdiction of Human Rights, Rights of the

Victims of Armed Conflict, Gender Violence, and Transitional Justice and Reconciliation. *See id*. In addition to obtaining a Human Rights Diploma, the Defendant also performed 735 hours of work for the Human Rights Committee. Specifically, while at "El Buen Pastor" the Defendant became a spokesperson and representative of the inmates vis-à-vis administrators and a mediator for conflicts affecting inmates. Letters from several of her fellow inmates and a doctor who treated her during this time describe her character and behavior. *See* Attachment D.

Finally, while at El Buen Pastor the Defendant began sponsoring breakfasts for indigenous children in the community of Cauca in Colombia where a friend of hers worked with indigenous women in silk good production. *See* Attachment E. The breakfasts began in October 2018. *See id*. Thus, despite the tragedies she endured and her own immoral conduct which led to the charges in this case, the Defendant has demonstrated an awareness that focusing on others is the best way to re-channel her grief and is genuinely grateful of the opportunity to do so.

(A)     *The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.*

A sentence below the guidelines is justified in this case as it would amply reflect the seriousness of the offense, provide just punishment and promote respect for the law. The Defendant is not only a first-time offender but is also someone who accepted responsibility for this offense back in Colombia when she was first arrested.  She knew before arriving in the United States that she would be pleading guilty to this offense.

While the offense itself is quite serious and there must be respect for the law and just punishment, none of these objectives are inconsistent with the exercise of mercy where it is merited.

(B)     *Afford adequate deterrence to criminal conduct.*

As noted, *supra*, the deterrence of criminal conduct will be effectuated by the Defendant's prison sentence in this case. Her incarceration in El Buen Pastor sent a message to all inmates housed there that the United States will not tolerate these offenses and will extradite and try anyone who is fairly accused of committing crimes in this country. Even a sentence below the guidelines will have the effect of deterring the criminal behavior of those who, like the Defendant, would be first-time offenders because the thought of any amount of prison time for these individuals is a strong disincentive to commit bank fraud. For those who are repeat offenders, they will understand that the Defendant's sentence will be lighter because she has no criminal history and can expect any future criminal behavior to result in a far greater sentence for themselves.

(C)     *Protect the public from further crimes of the defendant.*

The Defendant falls into several categories that lessen the likelihood of her recidivism: she is female[1], has zero criminal history points[2], and is being sentenced for

---

[1] 36.4% rate of recidivism as opposed to 52.2% for males.  *See* United States Sentencing Commission, "Recidivism Among Federal Offenders: A Comprehensive Overview" (2016) at 24.

[2] A federal offender's criminal history category is "closely correlated with recidivism rates" which range from 30.2% for individuals that have no criminal history points like the Defendant, to 80.1% for those in the highest criminal history point range.  *See* United States Sentencing Commission, "Recidivism Among Federal Offenders: A Comprehensive Overview" (2016) at 18.

fraud-related[3] offenses. *See* United States Sentencing Commission, "Recidivism Among Federal Offenders: A Comprehensive Overview," (2016).  Moreover, the Defendant has already begun participation in self-improvement and educational courses while incarcerated in Colombia indicating her willingness to participate in such programs. As one publication has noted:

> A RAND meta-analysis of the literature published in 2018 found that "inmates participating in correctional education programs were 28% less likely to recidivate when compared with inmates who did not participate in correctional education programs."

James Williams, "*Restoring Prisoners' Access to Education Reduces Recidivism*," PACIFIC STANDARD, April 16, 2019.

> (D)    *provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner*

The Defendant is hoping to avail herself of any available programs as she did while incarcerated in Colombia and welcomes any vocational training that might assist her upon her release.

> (3)(4) *The kinds of sentences available and the sentencing range established*

---

[3] Persons convicted of fraud experienced the lowest recidivism rate (34.2%) by type of offense while those previously convicted of drug trafficking had a much higher rate of recidivism (49.9%). *See* United States Sentencing Commission, "Recidivism Among Federal Offenders: A Comprehensive Overview" (2016) at 20.

These factors are adequately addressed in the PSR.

(5)     *Any pertinent policy statements*

This factor is adequately addressed by the PSR.

(6)     *The need to avoid unwarranted sentence disparities among*

*defendants with similar records who have been found guilty of*

*similar conduct.*

The individual disparities in treatment relating to offense conduct calculations between the Defendant and Sanchez Cristancho are addressed in the Defendant's Objections to the Pre-Sentence Investigation Report.

(7)     *The need to provide restitution to any victims of the offense.*

The lending institutions in this case are entitled to receive remuneration for their losses and it goes without saying that the sooner the Defendant is released, the sooner she can find gainful employment and begin to meet these obligations. The Defendant's commitment to paying her debts are sincere and she wishes to provide remuneration as quickly as possible. The Defendant proposes to sell a family property in Colombia and pledges the proceeds from the sale for the benefit of the lending institutions in this case. More specific information on this point will be presented at the time of sentencing.

Respectfully Submitted,
LAW OFFICES OF DAVID W. MACEY
135 San Lorenzo Avenue
Suite / Penthouse 830
Miami, FL 33146
Tel.: (305) 860-2562
E-Mail: dm@davidmacey.com

     //s// David W. Macey  //s//
Fla. Bar No. 185612
Attorney for Andrea Marroquin

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed electronically on October 11, 2019 to: The Southern District of Florida Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Frank Tamen

Assistant United States Attorney

By: *s/ David W. Macey*

David W. Macey, Esq.

Florida Bar No.: 185612